EXHIBIT A

Civil Action Cover Sheet - Case Initiation      (05/27/16) CCL 0520

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

PSB Partners, LLC, a New Mexico limited liability corporation

v.

F. Kenneth Bailey, Jr., P.C., a Texas professional corporation and F. Kenneth Bailey, Jr., an individual

No. _____

```
2017L003345
CALENDAR/ROOM T
TIME 00:00
Other Com Litigation
```

(FILE STAMP)

2017 APR -3 PM 3:37
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

## CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☐ Yes ■ No

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Lawrence W. Byrne
    (Attorney)          (Pro Se)

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ■ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** Breach of promissory note _____

Primary Email: LByrne@pedersenhoupt.com

Secondary Email: bbrennan@pedersenhoupt.com

Tertiary Email: cclaybough@pedersenhoupt.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the Clerk's Office for this case at this email address: _____

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, STATE OF ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| PSB PARTNERS, LLC,<br>a New Mexico limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: |
| v. | ) ) | **JURY DEMAND WAIVED** |
| F. KENNETH BAILEY, JR., P.C.,<br>a Texas professional corporation, and<br>F. KENNETH BAILEY, JR., an individual, | ) ) ) ) | 2017L003345<br>CALENDAR/ROOM T<br>TIME 00:00<br>Other Comm Litigation |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR ENTRY OF A JUDGMENT BY CONFESSION

PSB Partners, LLC ("PSB") sets out this Verified Complaint against defendants F.

Kenneth Bailey, J.R., P.C. ("FKB PC") and F. Kenneth Bailey, Jr. ("Bailey") (collectively,

"Defendants") as follows:

### Nature of the Action

1.     This action arises out of breaches by FKB PC and Bailey of a promissory note

(the "Note") and personal guaranty (the "Guaranty"), respectively, that Defendants entered into

with PSB on September 18, 2013.

### Parties, Jurisdiction and Venue

2.     PSB is a limited liability company organized under the laws of the State of New

Mexico, with offices located at 120 N. LaSalle Street, Suite 3200, Chicago, Illinois 60602.

3.     FKB PC is a Texas professional corporation.

4.     Bailey is an individual who has executed the Guaranty and has agreed to be

personally liable for the debts in this action.

5.     On information and belief, Bailey is a resident and citizen of the State of Texas

who resides in the city of Houston, Texas.

6.     This Court has personal jurisdiction over the Defendants pursuant to the terms of the Note and Guaranty.

7.     Cook County is the proper venue for this action because the Defendants consented to venue in this Court pursuant to the Note and Guaranty.

<div align="center"><u>**Factual Allegations Common to All Counts**</u></div>

8.     On September 18, 2013, FKB PC and PSB entered into the Note, wherein PSB loaned to FKB PC two-million-dollars ($2,000,000.00). (A true and correct copy of the Note is attached as Exhibit 1.)

9.     The purpose of the Note was to provide funds to FKB PC in support of Bailey Peavey Bailey, PLLC's[1] ("BPB") for business purposes, as evidenced by the Loan and Security Agreement associated with the Note, and entered into by PSB and FKB PC on September 18, 2013. (A true and correct copy of the Loan and Security Agreement is attached as Exhibit 2.)

10.     The Note incorporates certain terms of the Loan and Security Agreement, including that the maturity date for the funds extended to FKB PC under the Note were due and payable, along with all other associated fees, by December 13, 2013. (*See* Exhibit 2 at 2; Exhibits 1 at 1.)

11.     The Loan and Security Agreement provided FKB PC with the option to extend the maturity date from December 13, 2013 to January 12, 2014. (*See id.* at 2.)

12.     FKB PC exercised its option to extend the maturity date under the Note and Loan and Security Agreement from December 13, 2014 to January 12, 2014.

13.     The Note has matured and payment has not been made.

---

[1] Bailey Peavey Bailey, PLLC is a Texas based Professional Limited Liability Company of which F. Kenneth Bailey, Jr. is the founding partner.

14.     The Defendant has executed the attached consent judgment.

15.     The Loan and Security Agreement provides that PSB is entitled to reimbursement of certain costs and expenses incurred by PSB in connection with the loan, including a fee of twenty-five-thousand dollars ($25,000.00) payable upon FKB PC's repayment of the loan.

16.     The Note and Loan and Security Agreement each provide that PSB is entitled to recover its costs, including attorneys' fees, associated with its efforts to collect against FKB PC. (*Id.* at 8.)

17.     On September 19, 2013, Bailey executed the Guaranty ( a true and correct copy is attached as Exhibit 3), and guaranteed FKB PC's obligations under the Note and Loan and Security Agreement. (Exhibit 3 at 1.)

18.     Additionally, the Guaranty provides that PSB is entitled to recover its costs, including attorneys' fees, associated with its efforts to collect against Bailey. (*Id.* at 6.)

19.     FKB PC failed to pay the amounts due and owing under the Note and Loan and Security Agreement by January 12, 2014.

20.     FKB PC's failure to pay the full amounts due and owing under the Note and Loan and Security Agreement constitutes a default under each of these agreements.

21.     As of April 3, 2016, the total amount due and owing to PSB by FKB PC is **$7,765,000.00.**

22.     As a result of FKB PC's default under the Note and Loan and Security Agreement, Bailey, as guarantor, is obligated to pay all amounts due and owing to PSB as required by the Guaranty.

23.     However, Bailey has defaulted under the Guaranty by failing to pay the amounts due and owing to PSB as agreed.

## COUNT I - CONFESSION OF JUDGMENT - 735 ILCS 5/2-1301
### (Against F. Kenneth Bailey, Jr., P.C. on the Note)

24.     PSB incorporates by reference paragraphs 1 - 22 of this Verified Complaint as though fully set forth herein.

25.     The Note constitutes a valid and binding agreement entered into by FKB PC, and was not made in a consumer transaction as defined in 735 ILCS 5/2-1301(c).

26.     PSB has fulfilled all of its obligations under the Note.

27.     Under the Note, FKB PC agreed to pay to PSB: (a) the principal sum of $2,000,000.00; (b) the Loan Fee as defined in the Loan and Security Agreement; (c) the Equity Participation as defined in the Loan and Security Agreement; and (b) the Reimbursement Fee as defined in the Loan and Security Agreement. Exhibit 1, p. 1.

28.     Under the Note, the failure of FKB PC to pay all amounts due and owing to PSB constitutes a default.

29.     FKB PC defaulted under the Note by failing to pay all amounts due and owing to PSB as agreed.

30.     The Note provides that PSB is entitled to recover all costs, including attorneys' fees, associated with its efforts to collect on the Note.

31.     The Note contains a provision regarding confession of judgment, and provides that:

> Borrower hereby irrevocably authorizes and empowers any attorney at law to appear for borrower in an action on this note for the unpaid indebtedness or any other amounts then due under this note, attorneys' fees plus costs of suit, in any court of record in or of the state of Illinois, or elsewhere, to waive the issuing and service of process against borrower and to confess judgment in favor of lender and its successors or assigns, and to waive and release all errors in said proceedings and judgment, and all petitions in error, and right of appeal from the judgment rendered.

> The power granted herein will continue undiminished and may be exercised from time to time as lender may elect until al indebtedness and other amounts owing on this note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which borrower might have against any attorney acting under the terms of authority which borrower has granted herein arising out of or connected with the confession of judgment hereunder.

32.    A confession of judgment has been executed by attorney Lawrence W. Byrne, in accordance with the terms and conditions of the above confession of judgment provision. (A true and correct copy of the confession of judgment is attached as Exhibit 4.)

33.    While Mr. Byrne is counsel for PSB, the Note provides that any attorney may appear and confess to judgment for the unpaid indebtedness. Moreover, "Illinois courts have squarely held confessions of judgment by an attorney of the same firm as plaintiff's counsel does not invalidate the judgment." *Citibank, N.A. v. Bearcat Tire, A.G.*, 550 F. Supp. 148, 150 (N.D. Ill. 1982). This is especially true when, as here, the instrument specifically allows the judgment to be entered by "any attorney." *Id.* at 150.

34.    The Note is not an instrument used in a consumer transaction as such term is defined in 735 ILCS 5/2-1301(c).

35.    As of April 3, 2016, there is due and owing to PSB by FKB PC of seven-million-seven-hundred-sixty-five-thousand dollars ($7,765,000.00), as specified in paragraph 23 herein. Additional amounts continue to accrue on a per-diem basis, with PSB's total damages to be proven at a trial in this matter.

36.    PSB has incurred costs and attorneys' fees associated with this action and its efforts to collect on the Note, in an amount to be proven at a trial in this matter.

37.    PSB is allowed to move for confession of judgment against FKB PC "without process." 735 ILCS 5/2-1301(c).

38.    A proposed Order of Judgment by Confession is attached as Exhibit 5.

WHEREFORE, PSB Partners, LLC requests that this Court enter judgment in its favor and against defendant F. Kenneth Bailey, Jr., P.C. in the amount of $7,765,000.00, plus any costs and attorneys' fees associated with this matter or PSB Partners, LLC's efforts to collect on the note, and provide such other and further relief as the Court deems just and equitable.

### COUNT II - CONFESSION OF JUDGMENT - 735 ILCS 5/2-1301
**(Against F. Kenneth Bailey, Jr., P.C. on the Loan and Security Agreement)**

39.    PSB incorporates by reference paragraphs 1 - 38 of this Verified Complaint as though full set forth herein.

40.    The Loan and Security Agreement constitutes a valid and binding agreement entered into by FKB PC, and was not made in a consumer transaction as defined in 735 ILCS 5/2-1301(c).

41.    PSB has fulfilled all of its obligations under the Loan and Security Agreement.

42.    Under the Loan and Security Agreement, the failure of FKB PC to pay all amounts due and owing to PSB constitutes a default. (Exhibit 2 at 6.)

43.    FKB PC defaulted under the Loan and Security Agreement by failing to pay all amounts due and owing to PSB as agreed.

44.    The Loan and Security Agreement provides that PSB is entitled to recover all costs, including attorneys' fees, associated with its efforts to collect on the Loan and Security Agreement. (*Id.* at 8.)

45.    The Loan and Security Agreement contains a provision regarding confession of judgment, and provides that:

> Borrower hereby irrevocably authorizes and empowers any attorney at law to appear for borrower in an action on this agreement for the unpaid indebtedness or any other amounts then

due under this agreement, attorneys' fees plus costs of suit, in any court of record in or out of the State of Illinois, or elsewhere, to waive the issuing and service of process against borrower and to confess judgment in favor of lender and its successors or assigns, and to waive and release all errors in said proceedings and judgment, and al petitions in error, and right of appeal from the judgment rendered. The power granted herein will continue undiminished and may be exercised from time to time as lender may elect until the indebtedness and other amounts owing on this agreement have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which borrower might have against any attorney acting under the terms of authority which borrower has granted herein arising out of or connected with the confession of judgment hereunder.

46.     A confession of judgment has been executed by attorney Lawrence W. Byrne, in accordance with the terms and conditions of the above confession of judgment provision. (A true and correct copy of the confession of judgment is attached as Exhibit 6.)

47.     Though Mr. Byrne is counsel for PSB, the Loan and Security Agreement provides that any attorney may appear and confess to judgment for the unpaid indebtedness. Moreover, "Illinois courts have squarely held confessions of judgment by an attorney of the same firm as plaintiff's counsel does not invalidate the judgment." *Citibank, N.A. v. Bearcat Tire, A.G.*, 550 F. Supp. 148, 150 (N.D. Ill. 1982). This is especially true when, as here, the instrument specifically allows the judgment to be entered by "any attorney." *Id.* at 150.

48.     The Loan and Security Agreement is not an instrument used in a consumer transaction as such term is defined in 735 ILCS 5/2-1301(c).

49.     As of December 5, 2016, there is due and owing to PSB by FKB PC of seven-million-seven-hundred-sixty-five-thousand dollars ($7,765,000.00), as specified in paragraph 23 herein. Additional amounts continue to accrue on a per-diem basis, with PSB's total damages to be proven at a trial in this matter.

50.     PSB has incurred costs and attorneys' fees associated with this action and its.

efforts to collect on the Loan and Security Agreement, in an amount to be proven at a trial in this matter.

51.     PSB is allowed to move for confession of judgment against FKB PC "without process." 735 ILCS 5/2-1301(c).

52.     A proposed Order of Judgment by Confession is attached. (*See* Exhibit 5.)

WHEREFORE, PSB Partners, LLC requests that this Court enter judgment in its favor and against defendant F. Kenneth Bailey, Jr., P.C. in the amount of $7,765,000.00, plus any costs and attorneys' fees associated with this matter or PSB Partners, LLC's efforts to collect on the Loan and Security Agreement, and provide such other and further relief as the Court deems just and equitable.

## COUNT III - CONFESSION OF JUDGMENT - 735 ILCS 5/2-1301
### (Against F. Kenneth Bailey, Jr. on the Guaranty)

53.     PSB incorporates by reference paragraphs 1 - 25 of this Verified Complaint as though set forth fully herein.

54.     The Guaranty constitutes valid and binding agreement entered into by FKB PC, and was not made in a consumer transaction as defined in 735 ILCS 5/2-1301(c).

55.     PSB has fulfilled all of its obligations under the Guaranty.

56.     Under the Guaranty, Bailey agreed to repay FKB PC's indebtedness under the Note and Loan and Security Agreement in the event of FKB PC's default there under, including: (a) the principal sum of $2,000,000.00; (b) the Loan Fee as defined in the Loan and Security Agreement; (c) the Equity Participation as defined in the Loan and Security Agreement; and (b) the Reimbursement Fee as defined in the Loan and Security Agreement. (Exhibit 2 at 6.)

57.     Under the Guaranty, the failure of Bailey to pay all amounts due and owing to PSB upon FKB PC's default constitutes a default. (Exhibit 3 at 6.)

58.     Bailey defaulted under the Guaranty by failing to pay all amounts due and owing to PSB as agreed.

59.     The Guaranty provides that PSB is entitled to recover all costs, including attorneys' fees, associated with its efforts to collect on the Guaranty. (*Id.* at 8.)

60.     The Guaranty contains a provision regarding confession of judgment, and provides that:

> Guarantor hereby irrevocably authorizes and empowers any attorney at law to appear for guarantor in an action or this guaranty for the unpaid guaranteed indebtedness or any other amounts then due under this guaranty, attorneys' fees plus costs of suit, in any court of record in or of the State of Illinois, or elsewhere, to waive the issuing and service of process against guarantor and to confess judgment in favor of lender and its successors or assigns, and to waive and release all errors in said proceedings and judgment, and all petitions in error, and right of appeal from the judgment rendered. The power granted herein will continue undiminished and may be exercised from time to time as lender may elect until all guaranteed indebtedness and other amounts owing on this guaranty have been paid in full. Guarantor hereby waives and releases any and all claims or causes of action which guarantor might have against any attorney acting under the terms of authority which guarantor has granted herein arising out of or connected with the confession of judgment hereunder.

(*Id.* at 8-9.)

61.     A confession of judgment has been executed by attorney Lawrence W. Byrne, in accordance with the terms and conditions of the above confession of judgment provision.  (A true and correct copy of the confession of judgment is attached as Exhibit 7.)

62.     Though Mr. Byrne is counsel for PSB, the Guaranty provides that any attorney may appear and confess to judgment for the unpaid indebtedness.  Moreover, "Illinois courts have squarely held confessions of judgment by an attorney of the same firm as plaintiff's counsel does not invalidate the judgment." *Citibank, N.A. v. Bearcat Tire, A.G.*, 550 F. Supp. 148, 150

(N.D. Ill. 1982). This is especially true when, as here, the instrument specifically allows the judgment to be entered by "any attorney." *Id.* at 150.

63. The Guaranty is not an instrument used in a consumer transaction as such term is defined in 735 ILCS 5/2-1301(c).

64. As of December 5, 2016, there is due and owing to PSB by Bailey of seven-million-seven-hundred-sixty-five-thousand dollars ($7,765,000.00), as specified in paragraph 23 herein. Additional amounts continue to accrue on a per-diem basis, with PSB's total damages to be proven at a trial in this matter.

65. PSB has incurred costs and attorneys' fees associated with this action and its efforts to collect on the Guaranty, in an amount to be proven at a trial in this matter.

66. PSB is allowed to move for confession of judgment against Bailey "without process." 735 ILCS 5/2-1301(c).

67. A proposed Order of Judgment by Confession is attached. (*See* Exhibit 5.)

WHEREFORE, PSB Partners, LLC requests that this Court enter judgment in its favor and against defendant F. Kenneth Bailey, Jr. in the amount of $7,765,000.00, plus any costs and attorneys' fees associated with this matter or PSB Partners, LLC's efforts to collect on the Guaranty, and provide such other and further relief as the Court deems just and equitable.

Dated: April 3, 2017

Respectfully submitted,
PSB PARTNERS, LLC

Lawrence W. Byrne
PEDERSEN & HOUPT, P.C.
161 N. Clark Street
Suite 2700
Chicago, Illinois 60601
(312) 641-6888
Atty. No. 07779

By: _____
      One of Its Attorneys

00899285v1                                        10

CLERK OF THE CIRCUIT COURT - COOK COUNTY
00122755 Law-01 4/3/2017 3:39PM
ATTY: 07779 019 CLAUDINO
[illegible] $7,765,000.00
CASE NO: 2017L003345 CALENDAR: [illegible]
COURT DATE: 0/0/0000 12:00AM
CASE TOTAL: $368.00

| | |
|---|---|
| Automation | $25.00 |
| Document Storage | $25.00 |
| Law Library | $21.00 |
| Arbitration | $10.0 |
| Base Filing Fee G | $240. |
| Dispute Resolution | $1. |
| Court Services | $25 |
| Children Waiting Rm | $10 |
| Access Justice Fund | $2 |
| e-Business | $9 |

CHECK NO: 8362

| | |
|---|---|
| CHECK AMOUNT: | $368. |
| CHANGE | $0. |
| TRANSACTION TOTAL: | $368. |

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in the foregoing Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.


Robert J. Bobb

00899285v1

# EXHIBIT 1

## PROMISSORY NOTE

$2,000,000

September 1, 2013
Chicago, Illinois

FOR VALUE RECEIVED, F. Kenneth Bailey, Jr., P.C., a Texas professional corporation ("Borrower"), promises to pay to the order of PSB Partners, LLC, a New Mexico limited liability company ("Lender"): (a) the principal sum of Two Million Dollars ($2,000,000) (the "Loan"), (b) the Loan Fee, as defined in that certain Loan and Security Agreement ("Loan Agreement") of even date herewith, by and between Lender and Borrower, (c) the Equity Participation, as defined in the Loan Agreement and (d) the Reimbursement Fees, as defined in the Loan Agreement. The Loan, the Loan Fee, the Equity Participation and the Reimbursement Fees collectively shall be referred to as the "Indebtedness." Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement.

Unless sooner paid or extended pursuant to the terms of the Loan Agreement, (a) the Loan and the Loan Fee shall be due and payable in full on the Initial Maturity Date or the Extended Maturity Date, as defined in the Loan Agreement, and (b) the Equity Participation and the Reimbursement Fees shall be due and payable as provided in the Loan Agreement.

All payments made on account of the indebtedness evidenced by this Promissory Note (this "Note") shall be made without setoff, deduction or counterclaim in immediate available funds at such place as Lender may from time to time appoint and in the absence of such appointment, then at the office of Lender, 120 North LaSalle Street, Suite 3200, Chicago, Illinois 60602.

This Note is secured as provided in the Loan Agreement and guaranteed as provided in that certain Guaranty Agreement (the "Guaranty") of even date herewith, by F. Kenneth Bailey, Jr. ("Guarantor") for the benefit of Lender.

It is agreed that each of the following shall constitute and be deemed a "Default" by Borrower:

(a)     The failure by Borrower to pay the Indebtedness or any other amounts when due and payable hereunder.

(b)     Any representation or warranty made or deemed made by Borrower, Bailey Peavy Bailey, PLLC a professional limited liability company ("BPB") or Guarantor or any of their respective officers in (i) any certificate, report, notice, or financial statement furnished at any time in connection with this Note or (ii) the Loan Agreement, the Guaranty or any Loan Document (as defined in the Loan Agreement) shall be false, misleading, or erroneous in any material respect when made or deemed to have been made.

(c)     Borrower, BPB or Guarantor shall fail to perform, observe, or comply with any covenant, agreement or term contained in this Note, the Loan Agreement or any Loan Document.

00664906v2

(d)     Borrower, BPB or Guarantor shall commence a voluntary proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debts under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part of its property or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it or shall make a general assignment for the benefit of creditors or shall generally fail to pay its debts as they become due or shall take any corporate action to authorize any of the foregoing.

(e)     Borrower, BPB or Guarantor shall fail to pay when due any principal of or interest on any debt for borrowed money, or the maturity of any such debt shall have been accelerated, or any such debt shall have been required to be prepaid prior to the stated maturity thereof, or any event shall have occurred that permits (or, with the giving of notice or passage of time or both, would permit) any holder or holders of such debt or any person acting on behalf of such holder or holders to accelerate the maturity thereof or require any such prepayment.

(f)     This Note, the Loan Agreement or any other Loan Document shall cease to be in full force and effect or shall be declared null and void or the validity or enforceability thereof shall be contested or challenged by Borrower, BPB or Guarantor, or Borrower, BPB or Guarantor shall deny that it has any further liability or obligation hereunder prior to payment in full of all obligations hereunder, or the lien created by the Loan Agreement and the Guaranty shall cease to be a first priority Lien.

(g)     An event has occurred which has a material adverse effect on (i) the business, operations, property or condition (financial or otherwise) of Borrower, BPB or Guarantor, (ii) the ability of Borrower to pay the Indebtedness or any other obligations under this Note or the ability of Borrower, BPB or Guarantor to perform its respective obligations under this Note, the Loan Agreement or any of the other Loan Documents or (iii) the validity or enforceability of this Note, the Loan Agreement or any of the other Loan Documents, or the rights or remedies of Lender hereunder or thereunder.

(h)     Guarantor shall have died or have been declared incompetent by a court of law.

Notwithstanding any other provision contained in this Note, the payments and charges described herein (including all charges and fees deemed to be interest pursuant to applicable law) shall not exceed the maximum annual interest rate permitted by applicable law. In the event that the payments that are payable herein (including all charges and fees deemed to be interest under applicable laws) exceed the maximum legal rate of interest under applicable law (the "Maximum Interest Rate"), Borrower shall only pay Lender interest at the Maximum Interest Rate, and Borrower shall continue to make such payments at the Maximum Interest Rate until all amounts, fees and obligations payable hereunder have been paid in full.

Borrower agrees to the extent permitted by applicable law to: (i) waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal

hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest; (iii) waive all notices in connection with the delivery and acceptance hereof; (iv) waive any and all lack of diligence and delays in the enforcement of the payment hereof; (v) agree that the liability of Borrower shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by Lender to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions hereof, and to the release of any person or entity liable for the payment hereof; and (vii) pay on demand all costs, fees and expenses, including attorneys' fees and legal expenses, incurred by Lender in connection with the enforcement of the Loan Agreement and this Note or any other document or instrument delivered in connection with the Indebtedness, whether or not there is a lawsuit or other enforcement proceeding.

Borrower agrees that: (i) for all purposes in connection with this Note, Illinois law shall govern, all actions or proceedings relating to this Note shall be brought in the State or Federal Courts located in Cook County Illinois, the Secretary of State of Illinois is hereby designated to accept service of process on behalf of Borrower in connection with any litigation relating to this Note; (ii) the obligation evidenced by this Note is an exempted transaction under the Truth in Lending Act, 15 U.S.C. Section 1601, et seq.; (iii) said obligation constitutes a business loan within the purview of Section 205/4, paragraph (1)(c) of Chapter 815 of the Illinois Compiled Statutes, as amended; and (iv) the proceeds of the indebtedness evidenced by this Note will not be used for the purchase of registered equity securities within the purview of Regulation "U" issued by the Board of Governors of the Federal Reserve System.

The parties hereto intend and believe that each provision in this Note comports with all applicable law. However, if any provision in this Note is found by a court of law to be in violation of any applicable law, and if such court should declare such provision of this Note to be unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such provision shall be given full force and effect to the fullest possible extent that it is legal, valid and enforceable, that the remainder of this Note shall be construed as if such unlawful, void or unenforceable provision were not contained herein, and that the rights, obligations and interest of Borrower and the holder hereof under the remainder of this Note shall continue in full force and effect.

The obligations of Borrower hereunder shall be direct and primary and when the context of construction of the terms of this Note shall require, all words used in the singular herein shall be deemed to have been used in the plural and all words used in the plural herein shall be deemed to have been used in the singular.

This Note shall inure to the benefit of Lender and its successors and assigns.

The invalidity or unenforceability of any provision hereof shall not in any way affect, impair or render unenforceable any other provision hereof. It is intended that each provision herein which is invalid or unenforceable as written be valid and enforceable to the fullest extent possible.

Borrower acknowledges that it has been represented (or has had the opportunity to be represented) in the signing of this Agreement.

BORROWER HEREBY WAIVES ITS RIGHTS TO A TRIAL BY JURY AND ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE. THIS WAIVER IS KNOWINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. BORROWER ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, AND LENDER RELIED UPON THIS WAIVER IN MAKING THE LOAN AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN FUTURE DEALINGS PURSUANT TO THIS NOTE. BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND THE MAKING OF THIS NOTE AND THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.]

BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY AT LAW TO APPEAR FOR BORROWER IN AN ACTION ON THIS NOTE FOR THE UNPAID INDEBTEDNESS OR ANY OTHER AMOUNTS THEN DUE UNDER THIS NOTE, ATTORNEYS' FEES PLUS COSTS OF SUIT, IN ANY COURT OF RECORD IN OR OF THE STATE OF ILLINOIS, OR ELSEWHERE, TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST BORROWER AND TO CONFESS JUDGMENT IN FAVOR OF LENDER AND ITS SUCCESSORS OR ASSIGNS, AND TO WAIVE AND RELEASE ALL ERRORS IN SAID PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR, AND RIGHT OF APPEAL FROM THE JUDGMENT RENDERED. THE POWER GRANTED HEREIN WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL INDEBTEDNESS AND OTHER AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL. BORROWER HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH BORROWER MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH BORROWER HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

Time is of the essence hereof.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned has executed this Promissory Note as of the day and year first above written.

F. Kenneth Bailey, Jr., P.C.

By: _F Kenneth Bailey_

Name: _F KENNETH BAILEY JR_

Its: _Partner_

# EXHIBIT 2

## LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT (this "Agreement") dated as of this _18th_ day of September, 2013 (the "Closing Date"), is made and entered into by and between PSB Partners, LLC, a New Mexico limited liability company ("Lender") and F. Kenneth Bailey, Jr., P.C., a Texas professional corporation ("Borrower" and, together with Lender, sometimes referred to herein collectively as the "Parties").

### RECITALS

A.     Bailey Peavy Bailey, PLLC, a Texas professional limited liability company ("BPB") is pursuing certain transvaginal mesh product liability claims or actions (the "Litigation"), including those claims or actions filed against Ethicon, C.R. Bard, Boston Scientific, American Medical Systems, Coloplast, or any of the relevant companies, including, but not limited to, any claims or actions within the following consolidated multi-district litigations in re: C.R. Bard, Pelvic Repair Systems Products Liability Litigation, MDL 2187; In re: American Medical Systems, Pelvic Repair Systems Products Liability Litigation, MDL 2325, In re: Boston Scientific, Pelvic Repair Systems Products Liability Litigation MDL 2326; and In re: Ethicon, Pelvic Repair Systems Products Liability Litigation, MDL 2327.

B.     BPB is entitled to a percentage of the recovery, if any, received by its clients arising in connection with and/or derived from the Litigation, whether such recovery is received as a result of a settlement agreement, judgment award, or otherwise and may be entitled to other legal fees, reimbursed expenses or amounts arising in connection with the Litigation ("BPB's Fees").

C.     Borrower is entitled to a portion of BPB's Fees ("Borrower's Fees").

D.     F. Kenneth Bailey, Jr. ("Guarantor") is the sole shareholder and equity holder of Borrower and is entitled to any and all fees received by Borrower from BPB.

E.     Borrower desires to obtain a loan from Lender, the proceeds of which will be used to pay for the expenses to be incurred by it and/or BPB in prosecuting the Litigation.

F.     In order to assist Borrower, Lender is willing to loan money to Borrower on the terms and conditions set forth herein.

G.     Because of Guarantor's interest in Borrower and Borrower's interest in BPB, it is in the best interests of BPB to agree not to pledge its interest in BPB's Fees to any party prior to payment to Lender of the Indebtedness (as defined below).

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1.     <u>Loan</u>. Subject to the terms and conditions of this Agreement, and in reliance upon the representations and warranties of Borrower set forth herein, Lender agrees to make a term loan to Borrower in the amount of Two Million Dollars ($2,000,000) (the "Loan").

2.    <u>Maturity Date</u>. The maturity date for the Loan and the Loan Fee ("Initial Maturity Date") shall be December 13, 2013, subject to one (1) option pursuant to which Borrower may elect to extend the Maturity Date to January 12, 2014 ("Extended Maturity Date").

3.    <u>Repayment of Loan</u>. Subject to the terms and conditions of this Agreement, Borrower agrees to repay the full amount of the Loan and the Loan Fee on (a) the Initial Maturity Date, if not sooner paid, or (b) the Extended Maturity Date if extended pursuant to Section 2 above.

4.    <u>Loan Fee</u>. Subject to the terms and conditions of this Agreement, Borrower agrees to pay Lender a loan fee ("Loan Fee") as follows:

    a.    If the Loan is repaid on or before the Initial Maturity Date, the Loan Fee to Lender will be Five Hundred Thousand Dollars ($500,000).

    b.    If the Loan is paid after the Initial Maturity Date, but before the Extended Maturity Date, the Loan Fee due Lender will be Six Hundred Twenty-Five Dollars ($625,000).

    c.    If the Loan is paid after the Extended Maturity Date, the Loan Fee due Lender will be Six Hundred Twenty-Five ($625,000) plus One Hundred Thousand Dollars ($100,000) per month (or part thereof) thereafter.

5.    <u>Reimbursement Fees</u>. In order to reimburse Lender for certain costs and expenses incurred by Lender in connection with the Loan, Borrower agrees to pay to Lender the following fees ("Reimbursement Fees"): (a) a fee in the amount of Twenty-Five Thousand Dollars ($25,000) to be paid to Lender on the Closing Date; and (b) a fee in the amount of Twenty-Five Thousand Dollars ($25,000) to be paid to Lender upon Borrower's repayment of the Loan.

6.    <u>Equity Participation</u>. Lender shall participate in the amount received (directly or indirectly) by BPB, Borrower or Guarantor from the recovery, if any, received by BPB's clients arising in connection with and/or derived from the Litigation, whether such recovery is received as a result of a settlement agreement, judgment award or otherwise, and any other legal fees, reimbursed expenses or amounts arising in connection with the Litigation ("Equity Participation" and collectively with the Loan, the Loan Fee and the Reimbursement Fees, the "Indebtedness"). The Equity Participation shall be One Million Dollars ($1,000,000) if it is paid to Lender by September 13, 2014. If the Equity Participation is not paid to Lender by September 13, 2014, the amount of the Equity Participation shall increase by One Hundred Thousand Dollars ($100,000) per month (or part thereof) thereafter.

7.    <u>Security for Loan</u>.

    a.    <u>Guaranty</u>. As security for the Loan and repayment thereof, Borrower agrees to cause Guarantor to enter into a Guaranty Agreement (the "Guaranty") dated as of the Closing Date in the form prepared by and acceptable to Lender, pursuant to which Guarantor shall guarantee to Lender the full and prompt payment and performance of all obligations due hereunder.

b.  <u>Security Interest and Financing Statements</u>.  As security for the Indebtedness, including the Loan and repayment thereof, Borrower does hereby pledge, assign, transfer, deliver and grant to Lender a continuing and unconditional first priority security interest in and to Borrower's Fees (the "Collateral").  Borrower authorizes Lender to a file at any time, and from time to time, in Texas, West Virginia and any other jurisdiction, UCC-1 Financing Statements and amendments thereto without the signature of Borrower with (a) the Collateral description set forth in <u>Exhibit A</u> (regardless of whether any particular asset comprising a part of the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed) and (b) any other information required by Part 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed.  Borrower agrees, at any time and from time to time, to execute and deliver to Lender such documents and do such acts as Lender deems necessary in order to establish and maintain valid, attached and perfected first priority security interests in the Collateral in favor of Lender, free and clear of all liens and claims and rights of third parties whatsoever.

8.   <u>Conditions to Loan</u>.

a.   <u>Loan Documents</u>.  As a condition precedent to Lender's obligation to fund the Loan, Borrower agrees that it will deliver the following loan documents (the "Loan Documents") to Lender, all of which must be satisfactory to Lender and Lender's counsel in form, substance and execution:

i.   <u>Promissory Note</u>.  A Promissory Note dated as of the date of this Agreement, executed by Borrower to and for the benefit of Lender, in the form prepared by and acceptable to Lender.

ii.   <u>Guaranty</u>.  The Guaranty.

iii.   <u>Negative Pledge Agreement</u>.  A Negative Pledge Agreement (the "Negative Pledge Agreement") by and between Lender and BPB pursuant to which BPB agrees, among other things, (a) not to pledge, assign, transfer, deliver or grant to any party a security interest in and to BPB's Fees, (b) not to permit any party to file at any time in any jurisdiction, UCC-1 Financing Statements with respect to BPB's Fees, (c) to keep BPB's Fees free and clear of all liens and claims and rights of any parties whatsoever and (d) to promptly distribute BPB's Fees to Borrower.

iv.   <u>Other Loan Documents</u>.  Such other documents and instruments as further security for the Loan as Lender may reasonably require.

b.   <u>Other Due Diligence Items</u>.  As a condition precedent to Lender's obligation to fund the Loan, Borrower shall furnish the following to Lender all of which must be strictly satisfactory to Lender and Lender's counsel in form, content and execution:

i.      Searches. Search results indicating that no judgments, liens, security interests, financing statements or other encumbrances are on file encumbering any portion of the Collateral, and that there are no judgments, liens, pending litigation or bankruptcy actions outstanding with respect to Borrower, BPB or Guarantor.

ii.      Legal Opinion. A written legal opinion or opinions from Borrower's, BPB's and Guarantor's counsel, in form acceptable to Lender.

iii.      Certificates. Certificates of managers or officers of Borrower and BPB acceptable to Lender certifying (i) resolutions of Borrower and BPB which authorize the execution, delivery and performance by Borrower and BPB of this Agreement and the other Loan Documents to which each of Borrower and BPB is or is to be a party and (ii) the names of the managers or officers of Borrower and BPB authorized to sign this Agreement and each of the other Loan Documents to which each of Borrower and BPB is or is to be a party together with specimen signatures of such persons.

iv.      Organizational Documents. The Organizational Documents of Borrower and BPB certified by a manager or officer of Borrower and BPB, as applicable, acceptable to Lender.

v.      Good Standing Certificates. Certificates issued by the appropriate government officials of the state of organization of Borrower and BPB as to the existence and good standing of Borrower and BPB.

vi.      Additional Documentation. Such additional approvals, opinions or documents as Lender may reasonably request.

9.      Representations and Warranties of Borrower. Borrower represents and warrants to Lender as follows:

a.      BPB's Fees and Borrower's Fees. BPB is entitled to BPB's Fees pursuant to engagement letters with its clients. Borrower is entitled to receive Borrower's Fees from BPB, which Borrower's Fees comprise a portion of BPB's Fees, and any BPB Fees collected by BPB shall be applied first to pay Borrower's Fees prior to being paid to any other party. BPB's Fees and Borrower's Fees are free and clear of all liens, encumbrances, pledges, claims, options, security interests, calls and commitments of any kind. Borrower has full legal right, power and authority to enter into this Agreement and to grant a security interest in Borrower's Fees in accordance with the terms and conditions of this Agreement. BPB will not create any liens or encumbrances against BPB's Fees, and Borrower will not create any other liens or encumbrances against Borrower's Fees.

b.      Litigation Costs and Expenses. Neither BPB nor Borrower is a party to any contract or agreement or has any obligation or responsibility to pay any costs or expenses of the Litigation from BPB's Fees or Borrower's Fees, and BPB and Borrower

are entitled to be reimbursed for any costs or expenses that BPB or Borrower may have incurred prior to any recovery in connection with the Litigation from the percentage of such recovery allocated to the plaintiffs in the Litigation.

  c. <u>No Restrictions</u>. Neither BPB nor Borrower is a party to any contract or agreement, including, without limitation, any employment agreement, non-compete agreement or any other contract or agreement, or subject to any other restriction or subject to any restriction or condition contained in any permit, license, judgment, order, writ, injunction, decree or award which, singly or in the aggregate, materially and adversely affects or restricts or is likely to materially and adversely affect or restrict Lender's rights in the Collateral.

  d. <u>Approval and Authorization</u>. The execution and delivery of this Agreement by Borrower and the performance of the transactions contemplated herein have been duly and validly authorized by Borrower, and this Agreement is a legal, valid and binding obligation of Borrower, enforceable against it in accordance with its terms.

  e. <u>Pursuit of Litigation</u>. Borrower agrees to use its best efforts to pursue the Litigation with diligence until the Litigation has been fully resolved, which pursuit shall include all necessary and appropriate motions, discovery, hearings, trials and appeals.

  f. <u>No Conflicts</u>. The execution and delivery of this Agreement by Borrower does not, and the consummation by it of the transactions contemplated hereby do not and will not, violate or conflict with, or result (with the giving of notice or the lapse of time or both) in the violation of or constitute a default under any provision of, or result in the acceleration or termination of or entitle any party to accelerate or terminate (whether after giving of notice or lapse of time or both), any obligation or benefit under, or result in the creation or imposition of a lien, pledge, security interest or other encumbrance upon BPB's Fees or Borrower's Fees, pursuant to any contract, law, ordinance, regulation, order, arbitration award, judgment or decree to which BPB or Borrower is a party or by which them or BPB's Fees or Borrower's Fees are bound, and to Borrower's knowledge, does not and will not violate or conflict with any material restriction to which BPB or Borrower is subject or by which their respective assets (including BPB's Fees and Borrower's Fees) may be bound.

  g. <u>Organization</u>. Borrower is a professional corporation and is duly organized, validly existing and in good standing under the laws of the State of Texas.

  h. <u>Litigation</u>. There is no action, suit, investigation or proceeding before or by any governmental authority pending, or to the knowledge of Borrower, threatened against or affecting Borrower or BPB, that could, if adversely determined, reasonably be expected to have an adverse effect on Borrower or BPB, and there are no outstanding judgments against Borrower or BPB.

10.    Covenants of Borrower.  Borrower hereby represents, warrants, covenants and agrees that:

a.    Any funds received by Borrower from the Litigation shall be paid to Lender to satisfy the Indebtedness.  Such funds shall promptly be paid by Borrower to Lender to satisfy any and all amounts that may be owed by Borrower to Lender prior to paying such funds to any other party, including Guarantor, or using such funds for any other purpose.

b.    It shall not pay any costs or expenses in connection with the Litigation after any recovery in the Litigation, and Borrower shall promptly obtain reimbursement for any fees or expenses incurred by Borrower during the course of the Litigation from the percentage of the recovery allocated to the plaintiffs in the Litigation.

c.    It shall cause BPB to promptly distribute to Borrower Borrower's share of any funds received from the Litigation.

d.    Until the Loan, the Loan Fee and the Equity Participation have been paid in full, it shall provide as soon as available its (i) quarterly financial statements, (ii) federal income tax returns and (iii) monthly statements outlining the status of the Litigation.

e.    It will comply in all material respects with all applicable laws, rules, regulations and orders of any court, governmental authority or arbitrator, and all agreements, contracts and instruments binding on it or affecting its business.

f.    It will continue to conduct its primary businesses as conducted as of the date of this Agreement and continue its operations in such business.

11.    Defaults.  Each of the following shall constitute and be deemed an "Event of Default" by Borrower:

a.    Borrower shall fail to pay the Indebtedness when due.

b.    Any representation or warranty made or deemed made by Borrower, BPB or Guarantor or any of their respective officers in this Agreement, any of the Loan Documents or any certificate, report, notice, or financial statement furnished at any time in connection with this Agreement or any Loan Document shall be false, misleading, or erroneous when made or deemed to have been made.

c.    Borrower, BPB or Guarantor shall fail to perform, observe, or comply with any covenant, agreement or term contained in this Agreement or any Loan Document.

d.    BPB breaches the Negative Pledge Agreement.

e.    Borrower, BPB or Guarantor shall commence a voluntary proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debts under

any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part of its property or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it or shall make a general assignment for the benefit of creditors or shall generally fail to pay its debts as they become due or shall take any corporate action to authorize any of the foregoing.

       f.      An involuntary proceeding shall be commenced against Borrower, BPB or Guarantor seeking liquidation, reorganization, or other relief with respect to it or its debts under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official for it or a substantial part of its property.

       g.      Borrower, BPB or Guarantor shall fail to pay when due any amounts on any debt for borrowed money, or the maturity of any such debt shall have been accelerated, or any such debt shall have been required to be prepaid prior to the stated maturity thereof, or any event shall have occurred that permits (or, with the giving of notice or passage of time or both, would permit) any holder or holders of such debt or any person acting on behalf of such holder or holders to accelerate the maturity thereof or require any such prepayment.

       h.      An Event of Default, event of default, Default or default (however therein defined) shall occur in any document evidencing indebtedness of Borrower, BPB or Guarantor to Lender.

       i.      This Agreement or any other Loan Document shall cease to be in full force and effect or shall be declared null and void or the validity or enforceability thereof shall be contested or challenged by Borrower, BPB or Guarantor, or Borrower, BPB or Guarantor shall deny that it has any further liability or obligation hereunder prior to payment in full of all obligations hereunder, or the lien created by this Agreement and the Guaranty shall cease to be a first priority Lien.

       j.      An event has occurred which has a material adverse effect on (i) the business, operations, property or condition (financial or otherwise) of Borrower, BPB or Guarantor, (ii) the ability of Borrower to pay the Indebtedness or any other obligations under this Agreement or any of the other Loan Documents, (iii) the ability of Borrower, BPB or Guarantor to perform its respective obligations under this Agreement or any of the other Loan Documents or (iv) the validity or enforceability of this Agreement or any of the other Loan Documents, or the rights or remedies of Lender hereunder or thereunder.

       k.      Guarantor shall have died or have been declared incompetent by a court of law.

       l.      Guarantor fails to maintain unencumbered liquid assets of not less than Five Million Dollars ($5,000,000) in his name.

12.  Right to Participate.  Lender shall be given a right of first opportunity to make future loans or investments, or to participate in future loans or investments, in the Litigation or any other class or multiple plaintiff tort litigation prosecuted by Borrower or BPB, which require funds to finance the costs of litigation. Such loans or participations will be at the same rates and on the same terms as are otherwise offered to Borrower or BPB. Such right of first opportunity shall terminate upon payment in full of the Indebtedness.

13.  General.

a.  Further Assurances.  Borrower will cooperate with Lender prior to and after the execution of this Agreement in furnishing information and other assistance in connection with any actions, proceedings, arrangements or disputes of any nature with respect to matters pertaining to the Litigation and will take or cause to be taken such further action, and will execute, deliver and file such further documents and instruments as Lender reasonably requests in order to effectuate fully the purposes, terms and conditions of this Agreement.

b.  Loan Expenses.  Borrower shall be responsible for all the legal fees and expenses incurred by Lender in making the Loan, including any fees and costs incurred by Lender in connection with any borrowing by Lender in order to fund the Loan.

c.  Collection Costs.  Borrower agrees to pay on demand all costs, fees and expenses, including attorneys' fees and legal expenses, incurred by Lender in connection with the enforcement of this Agreement or any other document or instrument delivered in connection therewith, whether or not there is a lawsuit or other enforcement proceeding.

d.  Assignment; Binding Effect.  This Agreement and the rights and obligations of Lender hereunder may be assigned by Lender, and this Agreement shall be binding upon and inure to Lender and its successors and assigns. This Agreement and the rights and obligations of Borrower hereunder may not be assigned by Borrower, and this Agreement shall be binding upon and shall inure to the benefit of Borrower.

e.  Execution.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument. Execution and delivery of this Agreement by delivery of a facsimile copy bearing the facsimile signature of a party or via electronic mail shall constitute a valid and binding execution and delivery of this Agreement by such party. Such facsimile or electronically exchanged copies shall constitute enforceable original documents.

f.  Notices.  All notices or other communications required or permitted to be given pursuant to this Agreement shall be effective only if given in writing, referring to this Agreement, signed by the party giving such notice, and delivered either personally to such other party or parties, or sent prepaid by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party at the addresses set forth below. Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered

personally, when delivered; (ii) if delivered by nationally recognized overnight courier delivery service, on the next business day following the day such material is sent, and (iii) if by certified mail, three (3) days after such material is deposited in the United States Mail.

        If to Lender, addressed to it at:

        PSB Partners, LLC
        c/o Robert J. Bobb
        120 North LaSalle Street, Suite 3200
        Chicago, Illinois 60602

        With a copy to:

        Pedersen & Houpt
        Attn: Herbert J. Linn
        161 North Clark Street, Suite 3100
        Chicago, Illinois 60601

        If to Borrower, addressed to it at:

        F. Kenneth Bailey, Jr., P.C.
        c/o F. Kenneth Bailey, Jr.

        g.      <u>Governing Law; Venue</u>. For all purposes in connection with the Loan, Illinois law shall govern. The Parties agree that all actions or proceedings relating to the Loan, and the Loan Fee, including the Equity Participation, shall be brought in the State or Federal Courts located in Cook County Illinois. The Parties designate the Secretary of State of Illinois to accept service of process on behalf of the Parties in connection with any litigation relating to the Loan, the Loan Fee or the Equity Participation.

        h.      <u>Captions</u>. The captions in this Agreement are for convenience only and shall not be considered a part hereof or affect the construction or interpretation of any provisions of this Agreement.

        i.      <u>Entire Agreement</u>. This Agreement and the documents delivered pursuant hereto or in connection herewith constitute the entire agreement and understanding between Lender and Borrower, and supersede any prior agreements and understandings, written or oral, relating to the subject matter of this Agreement.

        j.      <u>Severability</u>. The parties hereto intend and believe that each provision in this Agreement comports with all applicable law. However, if any provision in this Agreement is found by a court of law to be in violation of any applicable law, and if such court should declare such provision of this Agreement to be unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such provision shall

9

be given full force and effect to the fullest possible extent that it is legal, valid and enforceable, that the remainder of this Agreement shall be construed as if such unlawful, void or unenforceable provision were not contained herein, and that the rights, obligations and interest of the Parties under the remainder of this Agreement shall continue in full force and effect.

k.      Representation. Borrower acknowledges that it has been represented (or has had the opportunity to be represented) in the signing of this Agreement.

l.      WAIVER OF JURY. BORROWER HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY AND ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT. THIS WAIVER IS KNOWINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. BORROWER ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, AND LENDER RELIED UPON THIS WAIVER IN MAKING THE LOAN AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN FUTURE DEALINGS PURSUANT TO THIS AGREEMENT. BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AND THE MAKING OF THIS AGREEMENT AND THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

M.      CONFESSION OF JUDGMENT.  BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY AT LAW TO APPEAR FOR BORROWER IN AN ACTION ON THIS AGREEMENT FOR THE UNPAID INDEBTEDNESS OR ANY OTHER AMOUNTS THEN DUE UNDER THIS AGREEMENT, ATTORNEYS' FEES PLUS COSTS OF SUIT, IN ANY COURT OF RECORD IN OR OUT OF THE STATE OF ILLINOIS, OR ELSEWHERE, TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST BORROWER AND TO CONFESS JUDGMENT IN FAVOR OF LENDER AND ITS SUCCESSORS OR ASSIGNS, AND TO WAIVE AND RELEASE ALL ERRORS IN SAID PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR, AND RIGHT OF APPEAL FROM THE JUDGMENT RENDERED.   THE POWER GRANTED HEREIN WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL THE INDEBTEDNESS AND OTHER AMOUNTS OWING ON THIS AGREEMENT HAVE BEEN PAID IN FULL. BORROWER HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH BORROWER MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH BORROWER HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

00664850v2                                          10

N.    USA Patriot Act Notification.  The following notification is provided to Borrower pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product.  What this means for Borrower:  When Borrower opens an account, if Borrower is an individual, Lender will ask for Borrower's name, taxpayer identification number, residential address, date of birth, and other information that will allow Lender to identify Borrower, and, if Borrower is not an individual, Lender will ask for Borrower's name, taxpayer identification number, business address, and other information that will allow Lender to identify Borrower.  Lender may also ask, if Borrower is an individual, to see Borrower's driver's license or other identifying documents, and, if Borrower is not an individual, to see Borrower's legal organizational documents or other identifying documents.  Borrower agrees to promptly provide any such information to Lender upon Lender's written request therefore.

[Signature page follows.]

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the day and year first above written.

Lender:

PSB Partners, LLC

By:_____
        Robert J. Bobb, its Manager

Borrower:

F. Kenneth Bailey, Jr., P.C.

By: _F Kenneth Bailey_____
Name: _F KENNETH BAILEY Jr_____
Its: _managing Partner_____

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the day and year first above written.

Lender:

PSB Partners, LLC

By:_____
Robert J. Bobb, its Manager

Borrower:

F. Kenneth Bailey, Jr., P.C.

By:_____
Name:_____
Its:_____

## Exhibit A

## Collateral Description

As security for the Indebtedness (as defined in that certain Loan and Security Agreement (the "Loan Agreement") dated as of September ___, 2013, by and between PSB Partners, LLC, a New Mexico limited liability company ("Lender"), and F. Kenneth Bailey, Jr., P.C., a Texas professional corporation ("Borrower"), including, without limitation, the Loan (as defined in the Loan Agreement), the Loan Fee (as defined in the Loan Agreement), the Reimbursement Fees (as defined in the Loan Agreement) and the Equity Participation (as defined in the Loan Agreement), Borrower does hereby pledge, assign, transfer, deliver and grant to Lender a continuing and unconditional first priority security interest in and to the following collateral:

The present and future right, title and interest of Borrower and F. Kenneth Bailey, Jr. in, and to, any and all legal fees and reimbursed expenses arising in connection with and/or derived from any and all Transvaginal Mesh product liability cases. The Transvaginal Mesh product liability cases are defined as any and all claims or actions, whether filed or not filed against Ethicon, C.R. Bard, Boston Scientific, American Medical Systems, Coloplast, or any of the relevant companies, including, but not limited to, any claims or actions within the following consolidated multi-district litigations in re: C.R. Bard, Pelvic Repair Systems Products Liability Litigation, MDL 2187; In re: American Medical Systems, Pelvic Repair Systems Products Liability Litigation, MDL 2325, In re: Boston Scientific, Pelvic Repair Systems Products Liability Litigation MDL 2326; and In re: Ethicon, Pelvic Repair Systems Products Liability Litigation, MDL 2327.

# EXHIBIT 3

## GUARANTY AGREEMENT

THIS GUARANTY (this "Guaranty") is dated as of September 19, 2013 by F. Kenneth Bailey, Jr. ("Guarantor"), to and for the benefit of PSB Partners, LLC, a New Mexico limited liability company ("Lender").

## RECITALS

A.    WHEREAS, the execution of this Guaranty Agreement is a condition to Lender making a certain loan to F. Kenneth Bailey, Jr., P.C., a Texas professional corporation ("Borrower"), pursuant to that certain Loan and Security Agreement (the "Loan Agreement"), executed by and between Lender and Borrower, evidenced by that certain Promissory Note in the principal amount of $2,000,000.00, executed by Borrower and payable to the order of Lender, dated as of the date hereof (the "Note"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement.

B.    Guarantor has a financial interest in Borrower and has agreed to execute and deliver this Guaranty to Lender.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.    Guarantor hereby irrevocably and unconditionally guarantees to Lender the full and prompt payment and performance of all of the indebtedness evidenced by the Note and the Loan Agreement, including but not limited to, the Loan, the Loan Fee, the Equity Participation, the Reimbursement Fees and all costs, fees and expenses (including attorneys' fees and legal expenses) and all renewals, extensions, amendments, increases, decreases, or other modifications of any of the foregoing and all promissory notes given in renewal, extension, amendment, increase, decrease or other modification thereof (the "Guaranteed Indebtedness").

2.    This instrument shall be an absolute, continuing, irrevocable, and unconditional guaranty of payment and performance, and not a guaranty of collection, and Guarantor shall remain liable on its obligations hereunder until the payment and performance in full of the Guaranteed Indebtedness. No setoff, counterclaim, recoupment, reduction, or diminution of any obligation, or any defense of any kind or nature which Borrower may have against Lender or any other party, or which Guarantor may have against Borrower, Lender, or any other party, shall be available to, or shall be asserted by, Guarantor against Lender or any subsequent holder of the Guaranteed Indebtedness or any part thereof or against payment of the Guaranteed Indebtedness or any part thereof.

3.    If Guarantor becomes liable for any indebtedness owing by Borrower to Lender by endorsement or otherwise, other than under this Guaranty Agreement, such liability shall not be in any manner impaired or affected hereby, and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

4.    In the event of default by Borrower in payment or performance of the Guaranteed Indebtedness, or any part thereof, when such Guaranteed Indebtedness becomes due, whether by its terms, by acceleration, or otherwise, Guarantor shall promptly pay the amount due thereon to Lender without notice or demand in lawful money of the United States of America and it shall not be necessary for Lender, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or others liable on such Guaranteed Indebtedness, or to enforce any rights against any collateral which shall ever have been given to secure such Guaranteed Indebtedness. Until payment in full of the Guaranteed Indebtedness and the passage of a period of ninety (90) days thereafter, Guarantor waives any and all rights it may now or hereafter have under any agreement or at law or in equity (including, without limitation, any law subrogating the Guarantor to the rights of Lender) to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Indebtedness for any payment made by Guarantor under or in connection with this Guaranty Agreement or otherwise.

5.    If acceleration of the time for payment of any amount payable by Borrower under the Guaranteed Indebtedness is stayed upon the insolvency, bankruptcy, or reorganization of Borrower, all such amounts otherwise subject to acceleration under the terms of the Guaranteed Indebtedness shall nonetheless be payable by Guarantor hereunder forthwith on demand by Lender.

6.    Guarantor hereby agrees that its obligations under this Guaranty Agreement shall not be released, discharged, diminished, impaired, reduced, or affected for any reason by the occurrence of any event, including, without limitation, one or more of the following events, whether or not there has been notice to or the consent of Guarantor: (a) the taking or accepting of collateral as security for any or all of the Guaranteed Indebtedness or the release, surrender, exchange, or subordination of any collateral now or hereafter securing any or all of the Guaranteed Indebtedness; (b) any partial release of the liability of Guarantor hereunder, or the full or partial release of any other guarantor or obligor, including, without limitation, Borrower or Bailey Peavy Bailey, PLLC a professional limited liability company ("BPB"), from liability for any or all of the Guaranteed Indebtedness; (c) any disability of BPB, Borrower or Guarantor, or the dissolution, insolvency, or bankruptcy of BPB, Borrower, Guarantor, or any other party at any time liable for the payment of any or all of the Guaranteed Indebtedness; (d) any renewal, extension, modification, waiver, amendment, or rearrangement of any or all of the Guaranteed Indebtedness or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Indebtedness; (e) any adjustment, indulgence, forbearance, waiver, or compromise that may be granted or given by Lender to Borrower, BPB, Guarantor, or any other party ever liable for any or all of the Guaranteed Indebtedness; (f) any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or to foreclose or take or prosecute any action in connection with any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Indebtedness; (g) the unenforceability or invalidity of any or all of the Guaranteed Indebtedness or of any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Indebtedness; (h) any payment by Borrower, BPB, Guarantor or any other party to Lender is held to constitute a preference under

00664907v3                                    2

applicable bankruptcy or insolvency law or if for any other reason Lender is required to refund any payment or pay the amount thereof to someone else; (i) the settlement or compromise of any of the Guaranteed Indebtedness; (j) the non-perfection of any security interest or lien securing any or all of the Guaranteed Indebtedness; (k) any impairment of any collateral securing any or all of the Guaranteed Indebtedness; (l) the failure of Lender to sell any collateral securing any or all of the Guaranteed Indebtedness in a commercially reasonable manner or as otherwise required by law; (m) any change in the corporate existence, structure, or ownership of BPB or Borrower; or (n) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower, BPB or Guarantor.

7.       Guarantor represents and warrants to Lender as follows:

(a)       Guarantor has the power, authority and legal right to execute, deliver, and perform its obligations under this Guaranty, and this Guaranty constitutes the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms.

(b)       Guarantor has the power, authority and legal right to cause BPB and Borrower to execute, deliver, and perform their obligations under the Loan Documents.

(c)       The execution, delivery, and performance by Guarantor of this Guaranty does not and will not violate or conflict with any law, rule, or regulation or any order, writ, injunction, or decree of any court, governmental authority, or arbitrator, and does not and will not conflict with, result in a breach of, or constitute a default under, or result in the imposition of any lien upon any of the revenues or assets of Guarantor pursuant to the provisions of any indenture, mortgage, deed of trust, security agreement, franchise, permit, license, or other instrument or agreement by which Guarantor or its properties is bound.

(d)       No authorization, approval, or consent of, and no filing or registration with, any court, governmental authority, or third party is necessary for the execution, delivery, or performance by Guarantor of this Guaranty or the validity or enforceability thereof.

(e)       The value of the consideration received and to be received by Guarantor as a result of Lender making the loan to Borrower evidenced by the Note and Guarantor executing and delivering this Guaranty is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation and the Note have benefited and may reasonably be expected to benefit Guarantor directly or indirectly.

(f)       Guarantor is not insolvent, Guarantor's assets exceed his liabilities, and Guarantor will not be rendered insolvent by the execution and performance of this Guaranty Agreement, the Note and the Loan Documents (as defined in the Loan Agreement).

(g)     Guarantor has unencumbered liquid assets of not less than Five Million Dollars ($5,000,000) in his name.

(h)     There is no action, suit, investigation or proceeding before or by any governmental authority pending, or to the knowledge of Guarantor, threatened against or affecting Guarantor, that could, if adversely determined, reasonably be expected to have an adverse effect on Guarantor, and there are no outstanding judgments against Guarantor.

(i)     Guarantor's interest in BPB and Borrower is free and clear of all liens, encumbrances, claims, options, security interests, calls and commitments of any kind.

(j)     Guarantor, Borrower and BPB have not pledged their interests in any legal fees in connection with the Litigation, including, BPB's Fees and Borrower's Fees.

(k)     Guarantor is an attorney licensed to practice law in the State of Texas and is in good standing with the State Bar of Texas.

8.     Guarantor covenants and agrees that, as long as the Guaranteed Indebtedness or any part thereof is outstanding, Guarantor will observe the covenants set forth below:

(a)     Guarantor will maintain unencumbered liquid assets of not less than Five Million Dollars ($5,000,000) in his name, and on the first day of each month subsequent to the date hereof, Guarantor shall provide Lender with a detailed statement that lists all of Guarantor's liquid assets and any encumbrances against such liquid assets.

(b)     Guarantor will provide to Lender as soon as available quarterly financial statements.

(c)     Guarantor will provide to Lender as soon as available federal income tax returns.

(d)     Guarantor will provide to Lender as soon as available monthly statements outlining the status of the Litigation (as defined in the Loan Agreement).

(e)     Guarantor will furnish promptly to Lender written notice of the occurrence of any default under this Guaranty, the Note or any of the Loan Documents of which Guarantor has knowledge.

(f)     Guarantor will furnish promptly to Lender such additional information concerning Guarantor as Lender may request.

(g)     Guarantor will comply in all material respects with all applicable laws, rules, regulations and orders of any court, governmental authority or arbitrator, and all agreements, contracts and instruments binding on it or affecting its business.

      (h)    Guarantor will continue to conduct its primary businesses as conducted as of the date of this Guaranty and to continue its operations in such businesses.

      (i)    Guarantor will not take any actions that will cause Lender to default on any of its obligations to its lender(s).

      (j)    Guarantor will provide prompt notice of any event which may reasonably have a material adverse effect on (i) Guarantor's covenant to maintain unencumbered liquid assets of not less than Five Million Dollars ($5,000,000) in his name or (ii) his ability to pay the Guaranteed Indebtedness.

      (h)    Guarantor will keep his interest in BPB and Borrower free and clear of all liens, encumbrances, claims, options, security interests, calls and commitments of any kind.

      (i)    Guarantor will not pledge his interests, and will not permit BPB and Borrower to pledge their interests, in any legal fees in connection with the Litigation, including, BPB's Fees and Borrower's Fees.

    9.    Upon the occurrence of a Default (as defined in the Note), Lender shall have the right to set off and apply against this Guaranty or the Guaranteed Indebtedness or both, at any time and without notice to Guarantor, any and all deposits (general or special, time or demand, provisional or final) or other sums at any time credited by or owing from Lender to Guarantor whether or not the Guaranteed Indebtedness is then due and irrespective of whether or not Lender shall have made any demand under this Guaranty.

    10.    In addition to Lender's right of setoff and as further security for this Guaranty and the Guaranteed Indebtedness, Guarantor hereby pledges, assigns, transfers, delivers and grants to Lender a continuing and unconditional first priority security interest in and to Guarantor's interest in the Collateral (as defined in the Loan Agreement) and his right to receive portions of the attorneys' fees which comprise the Collateral. Guarantor authorizes Lender to a file at any time, and from time to time, in any jurisdiction, UCC-1 Financing Statements and amendments thereto without the signature of Guarantor with (a) the Collateral description set forth in Exhibit A of the Loan Agreement (regardless of whether any particular asset comprising a part of the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed) and (b) any other information required by Part 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed. Guarantor agrees, at any time and from time to time, to execute and deliver to Lender such documents and do such acts as Lender deems necessary in order to establish and maintain valid, attached and perfected first priority security interests in the Collateral in favor of Lender, free and clear of all liens and claims and rights of third parties whatsoever. The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

    11.    Guarantor will cooperate with Lender prior to and after the execution of this Guaranty in furnishing information and other assistance in connection with any actions,

proceedings, arrangements or disputes of any nature with respect to matters pertaining to the Litigation and will take or cause to be taken such further action, and will execute, deliver and file such further documents and instruments as Lender reasonably requests in order to effectuate fully the purposes, terms and conditions of this Guaranty.

12. Guarantor acknowledges that Lender is not co-counsel of Guarantor in the Litigation and Lender does not represent any clients of Guarantor.

13. No amendment or waiver of any provision of this Guaranty or consent to any departure by the Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by Lender. No failure on the part of Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies herein provided are cumulative and not exclusive of any rights and remedies provided by law.

14. This Guaranty is for the benefit of Lender and its successors and assigns, and in the event of an assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness. This Guaranty is binding not only on Guarantor, but on Guarantor's heirs and personal representatives.

15. Guarantor recognizes that Lender is relying upon this Guaranty and the undertakings of Guarantor hereunder in making extensions of credit to Borrower under the Note and further recognizes that the execution and delivery of this Guaranty Agreement is a material inducement to Lender in making the Loan. Guarantor hereby acknowledges that there are no conditions which may diminish the full effectiveness of this Guaranty.

16. For all purposes in connection with this Guaranty, Illinois law shall govern. Borrower and Guarantor agree that all actions or proceedings relating to this Guaranty shall be brought in the State or Federal Courts located in Cook County Illinois. Borrower and Guarantor designate the Secretary of State of Illinois to accept service of process on behalf of Borrower and Guarantor in connection with any litigation relating to this Guaranty.

17. Guarantor shall pay on demand (a) all the legal fees and expenses incurred by Lender in making the Loan, including any fees and costs incurred by Lender in connection with any borrowing by Lender in order to fund the Loan and (b) all costs, fees and expenses, including attorneys' fees and legal expenses, incurred by Lender in connection with the enforcement of this Guaranty or any other Loan Documents, whether or not there is a lawsuit or other enforcement proceeding.

18. Guarantor hereby waives promptness, diligence, notice of any default under the Guaranteed Indebtedness, demand for payment, notice of acceptance of this Guaranty, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrower of

additional indebtedness, and all other notices and demands with respect to the Guaranteed Indebtedness and this Guaranty.

19.    The Loan Agreement, the Note, the Loan Documents and all of the terms thereof, are incorporated herein by reference, the same as if stated verbatim herein, and Guarantor agrees that Lender may exercise any and all rights granted to it under the Loan Agreement, the Note and the other Loan Documents without affecting the validity or enforceability of this Guaranty Agreement.

20.    All notices or other communications required or permitted to be given pursuant to this Guaranty shall be effective only if given in writing, referring to this Guaranty, signed by the party giving such notice, and delivered either personally to such other party or parties, or sent prepaid by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party at the addresses set forth below. Unless otherwise specified, notices shall be deemed given as follows:  (i) if delivered personally, when delivered; (ii) if delivered by nationally recognized overnight courier delivery service, on the next business day following the day such material is sent, and (iii) if by certified mail, three (3) days after such material is deposited in the United States Mail.

If to Lender, addressed to it at:

PSB Partners, LLC
c/o Robert J. Bobb
120 North LaSalle Street, Suite 3200
Chicago, Illinois 60602

With a copy to:

Pedersen & Houpt
Attn: Herbert J. Linn
161 North Clark Street, Suite 3100
Chicago, Illinois 60601

If to Guarantor, addressed to him at:

F. Kenneth Bailey, Jr.

_____
_____

21.    Guarantor hereby represents and warrants to Lender that Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition and assets of Borrower and that Guarantor is not relying upon Lender to provide (and Lender shall have no duty to provide) any such information to Guarantor either now or in the future.

00664907v3

7

22.     The parties hereto intend and believe that each provision in this Guaranty comports with all applicable law. However, if any provision in this Guaranty is found by a court of law to be in violation of any applicable law, and if such court should declare such provision of this Guaranty to be unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such provision shall be given full force and effect to the fullest possible extent that it is legal, valid and enforceable, that the remainder of this Guaranty shall be construed as if such unlawful, void or unenforceable provision were not contained herein, and that the rights, obligations and interest of Guarantor and the holder hereof under the remainder of this Guaranty shall continue in full force and effect.

23.     Guarantor acknowledges that he has been represented (or has had the opportunity to be represented) in the signing of this Agreement.

24.     THIS GUARANTY AGREEMENT EMBODIES THE FINAL, ENTIRE AGREEMENT OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTOR'S GUARANTY OF THE GUARANTEED INDEBTEDNESS AND SUPERSEDES ANY AND All PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE. THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTOR AND LENDER. THIS GUARANTY MAY NOT BE AMENDED EXCEPT IN WRITING BY GUARANTOR AND LENDER.

25.     GUARANTOR HEREBY WAIVES ITS RIGHTS TO A TRIAL BY JURY AND ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS GUARANTY. THIS WAIVER IS KNOWINGLY AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, AND LENDER RELIED UPON THIS WAIVER IN MAKING THE LOAN AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN FUTURE DEALINGS PURSUANT TO THIS GUARANTY.   GUARANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND THE MAKING OF THIS GUARANTY AND THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

26.     GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY AT LAW TO APPEAR FOR GUARANTOR IN AN ACTION ON THIS GUARANTY FOR THE UNPAID GUARANTEED INDEBTEDNESS OR ANY OTHER AMOUNTS THEN DUE UNDER THIS GUARANTY, ATTORNEYS' FEES PLUS COSTS OF SUIT, IN ANY COURT OF RECORD IN OR OF THE STATE

OF ILLINOIS, OR ELSEWHERE, TO WAIVE THE ISSUING AND SERVICE OF PROCESS AGAINST GUARANTOR AND TO CONFESS JUDGMENT IN FAVOR OF LENDER AND ITS SUCCESSORS OR ASSIGNS, AND TO WAIVE AND RELEASE ALL ERRORS IN SAID PROCEEDINGS AND JUDGMENT, AND ALL PETITIONS IN ERROR, AND RIGHT OF APPEAL FROM THE JUDGMENT RENDERED. THE POWER GRANTED HEREIN WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL GUARANTEED INDEBTEDNESS AND OTHER AMOUNTS OWING ON THIS GUARANTY HAVE BEEN PAID IN FULL. GUARANTOR HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH GUARANTOR MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH GUARANTOR HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned has executed this Guaranty Agreement as of the day and year first above written.

Guarantor:

*F. Kenneth Bailey Jr.*

F. Kenneth Bailey, Jr.

Signature Page - Guaranty Agreement

# EXHIBIT 4

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

PSB PARTNERS, LLC,  )
a New Mexico limited liability company,  )
                            )
          Plaintiff,  )
                            )
v.  )
                            )
F. KENNETH BAILEY, JR., P.C.,  )
a Texas professional corporation, and  )
F. KENNETH BAILEY, JR., an individual,  )
                            )
          Defendants.  )

### CONFESSION OF JUDGMENT UNDER THE NOTE

Defendant F. Kenneth Bailey, Jr., P.C. ("Defendant"), by and through his attorney in fact,

Lawrence W. Byrne, hereby confesses judgment as follows:

1.     On December 5, 2016, plaintiff PSB Parnters, LLC ("Plaintiff") filed a Verified

Complaint seeking to recover amounts due and owing under a Promissory Note dated September

18, 2013 (the "Note") as well as costs and attorneys' fees incurred as a result of Plaintiff's efforts

to recover.

2.     The Note contains the following confession of judgment provision:

> Borrower hereby irrevocably authorizes and empowers any attorney at law to appear for borrower in an action on this note for the unpaid indebtedness or any other amounts then due under this note, attorneys' fees plus costs of suit, in any court of record in or of the state of Illinois, or elsewhere, to waive the issuing and service of process against borrower and to confess judgment in favor of lender and its successors or assigns, and to waive and release all errors in said proceedings and judgment, and all petitions in error, and right of appeal from the judgment rendered. The power granted herein will continue undiminished and may be exercised from time to time as lender may elect until al indebtedness and other amounts owing on this note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which borrower might have against any attorney

00899285v1

acting under the terms of authority which borrower has granted herein arising out of or connected with the confession of judgment hereunder.

3.     The Note is not an instrument used in a consumer transaction as that term is defined in 735 ILCS 5/2-1301(c).

4.     Judgment is hereby confessed against Defendant in the amount of $7,765,000.00 plus any costs and attorneys' fees incurred by Plaintiff in association with its efforts to collect under the Note.

5.     Defendant hereby waives any and all errors in this case.

6.     Defendant hereby waives all rights of appeals in this case.

By: _____

Lawrence W. Byrne, attorney in fact

Prepared by:
Lawrence W. Byrne
Pedersen & Houpt, P.C.
161 N. Clark Street
Suite 2700
Chicago, Illinois 60601
Firm ID: 07779

00899285v1                                    2

# EXHIBIT 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

PSB PARTNERS, LLC,                                    )
a New Mexico limited liability company,               )
                                                      )
              Plaintiff,                               )
                                                      )
v.                                                    )
                                                      )
F. KENNETH BAILEY, JR., P.C.,                         )
a Texas professional corporation, and                )
F. KENNETH BAILEY, JR., an individual,               )
                                                      )
              Defendants.                              )

## ORDER OF JUDGMENT BY CONFESSION

IT IS HEREBY ORDERED:

1.   Judgment is entered upon the plaintiff PSB Partners, LLC's Verified Complaint in
     PSB Partners, LLC's favor and against defendant F. Kenneth Bailey, Jr., P.C. and
     Kenneth Bailey, Jr. personally in the amount of $7,765,000, plus any costs and
     attorneys' fees incurred by Plaintiff in association with its efforts to collect under
     the Note (as that term is defined in the Verified Complaint for Entry of a
     Judgment by Confession (the "Verified Complaint")).

2.   There is no reason to delay the appeal and enforcement of this order and this
     represents a final judgment of this court.

ENTER:_____
                              Judge

_____
                              Judge's Number

Prepared by:
Pedersen & Houpt, P.C.
161 N. Clark Street
Suite 2700
Chicago, Illinois 60601
Firm ID: 07779
*Attorneys for Plaintiff PSB Partners, LLC*

00899285v1                          3

# EXHIBIT 6

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| PSB PARTNERS, LLC,<br>a New Mexico limited liability company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| F. KENNETH BAILEY, JR., P.C.,<br>a Texas professional corporation, and<br>F. KENNETH BAILEY, JR., an individual, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## CONFESSION OF JUDGMENT UNDER THE LOAN AND SECURITY AGREEMENT

Defendant F. Kenneth Bailey, Jr., P.C. ("Defendant"), by and through his attorney in fact,

Lawrence W. Byrne, hereby confesses judgment as follows:

1.     On December 5, 2016, plaintiff PSB Parnters, LLC ("Plaintiff") filed a Verified

Complaint seeking to recover amounts due and owing under a Loan and Security Agreement

dated September 18, 2013, as well as costs and attorneys' fees incurred as a result of Plaintiff's

efforts to recover.

2.     The Loan and Security Agreement contains the following confession of judgment

provision:

> Borrower hereby irrevocably authorizes and empowers any
> attorney at law to appear for borrower in an action on this
> agreement for the unpaid indebtedness or any other amounts then
> due under this agreement, attorneys' fees plus costs of suit, in any
> court of record in or out of the State of Illinois, or elsewhere, to
> waive the issuing and service of process against borrower and to
> confess judgment in favor of lender and its successors or assigns,
> and to waive and release all errors in said proceedings and
> judgment, and al petitions in error, and right of appeal from the
> judgment rendered. The power granted herein will continue
> undiminished and may be exercised from time to time as lender
> may elect until the indebtedness and other amounts owing on this
> agreement have been paid in full. Borrower hereby waives and

releases any and all claims or causes of action which borrower might have against any attorney acting under the terms of authority which borrower has granted herein arising out of or connected with the confession of judgment hereunder.

3. The Loan and Security Agreement is not an instrument used in a consumer transaction as that term is defined in 735 ILCS 5/2-1301(c).

4. Judgment is hereby confessed against Defendant and in favor of Plaintiff in the amount of $7,765,000.00 plus any costs and attorneys' fees incurred by Plaintiff in association with its efforts to collect under the Loan and Security Agreement.

5. Defendant hereby waives any and all errors in this case.

6. Defendant hereby waives all rights of appeals in this case.

By: _____
Lawrence W. Byrne, attorney in fact

Prepared by:
Lawrence W. Byrne
Pedersen & Houpt, P.C.
161 N. Clark Street
Suite 2700
Chicago, Illinois 60601
Firm ID: 07779

# EXHIBIT 7

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| PSB PARTNERS, LLC, <br> a New Mexico limited liability company, <br><br>       Plaintiff, <br><br> v. <br><br> F. KENNETH BAILEY, JR., P.C., <br> a Texas professional corporation, and <br> F. KENNETH BAILEY, JR., an individual, <br><br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## CONFESSION OF JUDGMENT UNDER THE GUARANTY

Defendant F. Kenneth Bailey, Jr. ("Defendant"), by and through his attorney in fact,

Lawrence W. Byrne, hereby confesses judgment as follows:

1.  On April 3, 2017, plaintiff PSB Partners, LLC ("Plaintiff") filed a Verified

Complaint seeking to recover amounts due and owing under a Guaranty Agreement (the

"Guaranty") dated September 18, 2013, as well as costs and attorneys' fees incurred as a result of

Plaintiff's efforts to recover.

2.  The Guaranty contains the following confession of judgment provision:

> Guarantor hereby irrevocably authorizes and empowers any
> attorney at law to appear for guarantor in an action or this guaranty
> for the unpaid guaranteed indebtedness or any other amounts then
> due under this guaranty, attorneys' fees plus costs of suit, in any
> court of record in or of the State of Illinois, or elsewhere, to waive
> the issuing and service of process against guarantor and to confess
> judgment in favor of lender and its successors or assigns, and to
> waive and release all errors in said proceedings and judgment, and
> all petitions in error, and right of appeal from the judgment
> rendered. The power granted herein will continue undiminished
> and may be exercised from time to time as lender may elect until
> all guaranteed indebtedness and other amounts owing on this
> guaranty have been paid in full. Guarantor hereby waives and
> releases any and all claims or causes of action which guarantor

might have against any attorney acting under the terms of authority which guarantor has granted herein arising out of or connected with the confession of judgment hereunder.

3.   The Guaranty is not an instrument used in a consumer transaction as that term is defined in 735 ILCS 5/2-1301(c).

4.   Judgment is hereby confessed against Defendant and in favor of Plaintiff in the amount of $7,765,000.00 plus any costs and attorneys' fees incurred by Plaintiff in association with its efforts to collect under the Guaranty.

5.   Defendant hereby waives any and all errors in this case.

6.   Defendant hereby waives all rights of appeals in this case.

By: _____
Lawrence W. Byrne, attorney in fact

Prepared by:
Lawrence W. Byrne
Pedersen & Houpt, P.C.
161 N. Clark Street
Suite 2700
Chicago, Illinois 60601
Firm ID: 07779

2